## MARY JANE STEVENS CO. v. FOLEY et al.

### No. 4302.   Decided August 5, 1926.   (248 P. 815.)

1. CONTEMPT—SUPPLEMENTAL ANSWER AND RETURN OF TRUSTEE IN BANKRUPTCY IN FEDERAL COURT HELD NOT ENTITLED TO BE TREATED AS PART OF RECORD ON APPEAL FROM ORDER ADJUDGING TRUSTEE IN CONTEMPT IN STATE COURT. On appeal by trustee in bankruptcy from order adjudging him in contempt for failure to comply with judgment of state court, supplemental answer and return of trustee in bankruptcy proceedings in federal court, which was not certified to by any one, nor was there any consent or agreement of parties that it might be treated by Supreme Court as part of record, could not be considered as part of record on appeal.

2. APPEAL AND ERROR. Supreme Court may consider only the record on appeal as certified and transmitted to it.

3. ABATEMENT AND REVIVAL—STATE COURT OF COMPETENT JURISDICTION ACQUIRING JURISDICTION OF PROPERTY OF BANKRUPTS HELD NOT DIVESTED FROM FURTHER PROCEEDING AFTER BANKRUPTCY PROCEEDINGS WERE INSTITUTED AND TRUSTEE APPOINTED. Where claimant had statutory lien for rent on property of bankrupts and instituted suit in state court to foreclose it, and state court acquired custody of property before bankruptcy proceedings were instituted and bankrupts adjudicated, state court, being a court of competent jurisdiction, was not divested from further proceeding after bankruptcy proceedings were instituted and trustee appointed.

4. JUDGMENT—TRUSTEE AGREEING TO RENDITION AND ENTRY OF JUDGMENT AND SALE OF PROPERTY OF BANKRUPTS AS DECREED BY STATE COURT HELD BOUND THEREBY. Trustee in bankruptcy, who was appointed after action was commenced in state court and property seized and in custody of that court, and who was made party to such proceedings and agreed to rendition and entry of judgment and sale of property as was rendered by state court, was bound by such judgment and order of sale.

5. JUDGMENT—THAT STATE COURT IN JUDGMENT AND ORDER OF SALE OF BANKRUPTS' PROPERTY FOR UNPAID RENT INCLUDED ATTORNEY'S FEE, AND IN DETERMINING AMOUNT OF LANDLORD'S LIEN COULD CONSIDER ONLY AMOUNT OF RENT DUE AND UNPAID, CONSTITUTED MERE ERROR NOT AFFECTING JURISDICTION, WHERE JUDGMENT AND ORDER WERE NOT DIRECTLY ATTACKED. Where trustee in bankruptcy was appointed after action to recover rent was commenced in state court and properly seized and in custody of that court,

and was made party to such proceedings and agreed to rendition and entry of judgment and sale of property entered by state court, that state court ought not to have inclued attorney's fee, and in determining amount of landlord's lien could consider only amount of rent due and unpaid, constituted mere error, not affecting its jurisdiction, where no appeal was taken from judgment nor order of sale, nor any direct attack made thereon.

6. BANKRUPTCY—RIGHTS OF CLAIMANTS IN PROPERTY OF BANKRUPT NEED NOT BE SUBMITTED FOR DETERMINATION IN BANKRUPTCY COURT BY SUMMARY PROCEEDINGS, EVEN ON NOTICE AND HEARING, BUT ONLY BY INSTITUTION OF PLENARY SUITS. Third parties having at time of bankruptcy possession of tangible property or funds involved under claim of beneficial or adverse interest therein cannot be obliged to surrender them, nor can third persons owing debts to bankrupt at time of bankruptcy be obliged to pay debts, nor submit their rights therein for determination in bankruptcy court by summary proceedings, even on notice and hearing, but only by institution of plenary suits.

7. CONTEMPT. Disobedience of a valid order of a court constitutes contempt, unless defendant is unable to comply with it.

8. CONTEMPT—TRUSTEE IN BANKRUPTCY FAILING TO TURN OVER MONEY TO PLAINTIFF AS REQUIRED BY JUDGMENT OF STATE COURT HELD IN CONTEMPT, THOUGH HE HAD DEPOSITED THE MONEY. On failure of trustee in bankruptcy to comply with judgment of state court requiring him to turn over money to plaintiff in compliance with judgment, court was authorized in finding trustee guilty of contempt and in committing him until money was paid, unless his inability to comply with judgment was made clearly to appear; it being immaterial that trustee had so deposited money that he no longer had control of it.

Appeal from District Court, Second District, Weber County; *James N. Kimball,* Judge.

Corpus Juris-Cyc. References:

[1, 2]   Appeal and Error 4 C. J. p. 553 n. 35; Contempt 13 C. J. p. 104 n. 17 New.

[3]   Abatement and Revival 1 C. J. p. 144 n. 55.

[4-6]   Bankruptcy 7 C. J. p. 252 n. 51 New; Judgments 34 C. J. p. 562 n. 17 New; p. 1024 n. 70.

[7, 8]   Contempt 13 C. J. p. 9 n. 66; p. 12 n. 93.

Action by the Mary Jane Stevens Company against Thomas C. Foley and Sarah R. Foley, copartners, etc., and another. Judgment for plaintiff. On petition of plaintiff, F. A. Behling, trustee in bankruptcy of the named defendant, was adjudged in contempt for failing to comply with judgment, and he appeals.

Judgment of contempt AFFIRMED.

*De Vine, Howell, Stine & Gwilliam,* of Ogden, for appellant.

*S. C. Powell, Joseph E. Evans, H. A. Soderberg,* and *Pratt & Pratt,* all of Ogden, for plaintiff.

STRAUP, J.

The Foleys were engaged in a mercantile business in Ogden City. They leased the premises on which they carried on their business from the Mary Jane Stevens Company. Under our statute the lessor is given a lien for rent due upon all the property of the lessee not exempt from execution as long as he shall occupy the leased premises and for 30 days thereafter. The statute further provides that when any rent shall become due the lessor may apply for a warrant to seize the property of the lessee and to sell it in payment and discharge of the lien.

On February 13, 1925, the company, in the state district court, brought an action against the Foleys to recover rent due for the months of December, 1924, and January and February, 1925, amounting to $750, and $200 attorney's fee (the lease providing for reasonable attorney's fee), and caused a warrant to issue and the property of the Foleys seized and taken into possession by the sheriff. Following that the Foleys made an assignment to the Merchants' Credit Bureau for the benefit of creditors. Thereafter the bureau was also made a party defendant. On April 1, 1925, the

Foleys and the bureau filed a petition in the cause wherein they averred that the Foleys, on March 10, 1925, were adjudged bankrupts, and that Behling was appointed trustee in bankruptcy, and obtained a temporary restraining order from the state court restraining the company from further proceeding in the cause. The company moved to dismiss the petition and to vacate the order. Behling, as trustee, also appeared in the cause and was made a party defendant. Thereupon, in open court, it was agreed and stipulated by and between all the parties concerned, including Behling, the trustee, that the petition to stay the proceedings be dismissed and the restraining order vacated, and that judgment be entered in the cause in favor of the company "and against the defendants, in accordance with plaintiff's demands," for rent due amounting to $750, interest $16.50, costs $26.50, attorney's fee $200, and $152.50 sheriff's costs and expenses, or a total of $1,145.50; that it be adjudged that the company had a lessor's lien "paramount to any and all other liens" upon the goods and merchandise of the Foleys as security for the payment and satisfaction of the judgment and accrued costs, and that the property seized and in the possession of the sheriff be sold by Behling, the trustee, pursuant to the stipulation and an order of the referee in bankruptcy to be procured forthwith in the bankruptcy proceedings, and that the sale be made free from the lien, provided the lien should thereupon attach to and remain upon the proceeds of sale, and that Behling, the trustee, pay into court sufficient of such proceeds to satisfy and discharge the lien and the judgment with accrued costs. Such a judgment was accordingly rendered and entered April 7, 1925. On the same day the trustee sold the property for the sum of $2,000, which sum was then paid to him by the purchaser, and on the same day obtained an order of the referee approving the sale and the payment of the proceeds as by the stipulation and judgment provided. But the trustee did not, in compliance with the stipulation or with the judgment, pay the proceeds or any part thereof

into court, but deposited them in a bank at Ogden in his name as trustee, and subject to his check countersigned by the referee, and failed and refused to pay the judgment or any part thereof. Thus on May 23, 1925, on petition of the company, the trustee was ruled into court and required to show cause why he should not be punished for contempt for disobedience of the order and judgment of the court. The trustee answered, alleging that, notwithstanding it appeared from the records and files in the cause that he was made a party thereto, nevertheless he had made no such application and had not authorized any one to appear for him, and that the attorneys who on the record purported to have made an appearance for him had no authority to do so. He further alleged that, while the referee on April 7th had approved the sale and had directed the trustee to pay the full amount of the judgment out of the proceeds, he nevertheless thereafter, on May 19, 1925, modified such order as to the disbursement of the proceeds, and directed the trustee that out of such proceeds he first pay the costs of administration in the bankruptcy proceedings, the referee and trustee's fees and attorney's fee for the trustee, and labor claims, before any part of such proceeds be applied or paid on the judgment. The trustee thus averred that it was not within his power to draw on the proceeds so deposited by him in bank without the countersignature of the referee, which the referee declined to give unless the proceeds be paid out and disbursed as directed by him on May 19th.

The court found, and there does not seem to be much if any dispute about it, that the trustee was properly made a party in the cause, and by counsel duly authorized appeared therein, entered into the agreement and stipulation, and consented to the judgment and sale and to the payment of the proceeds into court to be applied in payment and satisfaction of the judgment and was bound thereby, treated the other matters alleged in the answer to show cause, and especially with respect to the subsequent order of the referee, as immaterial and indefensive, and thus rendered

judgment adjudging the trustee guilty of contempt and requiring him to pay the moneys into court within seven days, to be applied in satisfaction of the judgment, or so much thereof as was necessary for such purpose, and that in default thereof he be committed until such payment was made by him.

From that judgment of contempt the trustee has prosecuted this appeal. In his assignments of error he complains of the court's refusal to consider and regard as binding the supplemental order of the referee as to the manner in which the proceeds of sale were to be applied, contends that the referee had exclusive jurisdiction of the property and of the proceeds of sale, that the trustee was willing to comply with the judgment and order of the court as to the payment of such proceeds, but being otherwise directed by the referee, who refused to countersign any check to draw on the funds or proceeds in accordance with the judgment and order of the court, he was unable to comply therewith and hence ought not to be adjudged guilty of contempt. The appeal was taken by him from the judgment of contempt on June 24 and perfected on June 29, 1925. Pending the appeal the trustee was admitted to bail. After such appeal had so been perfected and the record of appeal transmitted to this court, the trustee, on February 20, 1926, served, and on April 26, 1926, filed in this court, what he terms a "Supplemental Answer and Return to the Order to Show Cause," in which he in substance alleged that he on July 30, 1925, more than a month after he was adjudged guilty of contempt and about a month after the appeal was perfected and the record of appeal transmitted to this court, filed a petition in the federal district court, wherein he averred the proceedings had in the state district court, alleged that it was the duty of the referee to countersign a check permitting the trustee to draw on the funds so deposited by him in bank, and to pay the judgment in the state court as therein provided, and directed but that the referee arbitrarily refused to do so and had no juris-

diction of such proceeds or fund except such as were in
excess after payment of the judgment and costs, and
prayed that the referee be directed to show cause why he
should not be required to sign with the trustee a check in
an amount sufficient to pay the judgment and accrued
costs and thereby release the trustee from the judgment
of contempt. It further is averred in such supplemental
answer that an order was issued by the federal District
Court requiring the referee to show cause; that the Mary
Jane Stevens Company appeared specially therein alleging
that the state court had judisdiction of the subject-matter,
of the controversy, of the parties, of the property, and of
sufficient of the proceeds thereof to pay and discharge the
judgment; that the federal court was without jurisdiction
except as to the excess of such proceeds and had no power
or authority to summarily or otherwise vacate or modify or
interfere with the judgment of the state court; and that
the order of the referee of May 19, 1925, directing the
manner in which the proceeds of sale were to be disbursed
or paid was void. It further is averred in such supplemental
answer that the Foleys and a creditor claimant also ap-
peared in the federal court and averred that the trustee had
no power or authority to consent to the judgment in the
state court as was done by him, and objected to the pay-
ment of the judgment or any part thereof except as author-
ized and directed by the referee or the federal court. Then
it is alleged that upon a hearing of such matters in the
federal District Court, that court ordered and directed the
trustee out of the proceeds of sale to pay the Mary Jane
Stevens Company the sum of $945.50, being the full amount
of the judgment including costs less the $200 which was
awarded as and for attorneys' fees, and the trustee in such
supplemental answer further averred that the Mary Jane
Stevens Company was estopped from demanding or enforc-
ing the judgment of the state court as against the trustee
otherwise than as in the order and judgment of the federal
court directed.

No motion was presented to and no leave was had from this court to file or to consider such so-called supplemental answer and return. Objection is made to our taking cognizance of or considering it upon the ground that it is not a part of the record on appeal and is not properly before us. We think the objection is well taken. We may consider only the record on appeal as certified and transmitted to us. The alleged record in the federal court in no particular is certified to by any one, and clearly is no part of the record on appeal, nor is there any consent or agreement of the parties that it may be treated and regarded by us as such. Hence we are required to disregard, as we do, the so-called supplemental answer and return.

In the brief of counsel for the trustee, the appellant, it is urged that after the Foleys were adjudged bankrupts and the trustee appointed the state court no longer had jurisdiction of the property, and that the trustee thereafter was subject to the orders and direction of the referee and the federal court and not of the state court; that the judgment of the state court was conditional upon the approval of the referee as to the sale and disposition of the property of the Foleys in the hands of the sheriff; that the company, having been made a party to the proceedings in the federal court where in the so-called supplemental answer it is alleged that it was adjudged that the company was entitled to a lien for rent only and not for attorney's fees, was bound by such judgment notwithstanding the judgment of the state court to the contrary.

In the first place, as already observed, all that is properly before us for consideration are the proceedings had in the state court wherein on proper issues and on the stipulation and agreement of the parties, including the trustee, the amount of the lien and costs were determined and adjudged and the seized property sold and the proceeds of sale directed to be applied in satisfaction thereof. The company having a statutory lien for rent on the proper-

ty of the Foleys and a suit having been instituted in the state court to foreclose it and the state court in such proceedings having acquired custody of the property before the bankruptcy proceedings were instituted and the Foleys adjudged bankrupts, the state court, being a court of competent jurisdiction and having acquired jurisdiction of the subject-matter and of the parties, was not divested from further proceeding after the bankruptcy proceedings were instituted and the trustee appointed. In 2 Remington, Bankruptcy, § 1586, the author says:

"A suit in equity, such as a foreclosure suit or other legal proceedings to enforce a lien which itself is not claimed to be in contravention of the peculiar provisions of the bankruptcy act nullifying liens obtained by legal proceedings, where such suit or other proceedings is instituted before the filing of the bankruptcy petition, is not abated, and the state court retains jurisdiction. It is not to be transferred to the bankruptcy court simply because the bankruptcy of the mortgagor or debtor occurs within four months of the commencement of the foreclosure suit."

In section 1582 the author also says:

"If the state court first obtains possession, it retains jurisdiction, except in three instances. Where property afterwards claimed by the bankruptcy trustee is taken into the custody of the state court (or any other court than the bankruptcy court) before the bankruptcy petition was filed, the state court, or such other court, continues to retain jurisdiction over the entire matter except in three instances, later to be explained, and the only thing for the trustee to do is to get himself admitted as a party in the case in the state court and to litigate his rights there. For the rule of law that the court first obtaining jurisdiction over the 'res' retains it to the end, prevails in bankruptcy as well as in every other jurisprudence."

Many cases are cited in support of these propositions.

It of course is apparent that the proceedings in the state court do not fall within any of these exceptions. The trustee having been appointed after the action was commenced in the state court and the property seized    4–6 and in custody of that court, and he having been made

a party to such proceedings and having stipulated and agreed to the rendition and entry of the judgment and sale of the property as was rendered, entered, and directed by the state court, is bound by such judgment and order of sale. *Hoover et al.* v. *Mortgage Co.*, 290 F. 891. If, as now contended by the appellant, the state court ought not to have included an attorney's fee and that the court in determining the amount of lien could consider only the amount of rent due and unpaid, such a ruling was mere error; and if for such or any other reason it is claimed that such judgment is erroneous, the judgment ought to have been assailed on an appeal therefrom or by some other direct proceeding. But no appeal was taken from that judgment nor from the order of sale, nor was there otherwise any direct attack made on such judgment or sale. True, the trustee points to the matters averred in his so-called supplemental answer as a modification of the judgment of the state court by the federal court and as res adjudicata of such issue; but such matters not being properly before us cannot be noticed or considered by us. And then, as is urged by the respondent here, it is doubtful whether the federal court, upon the proceedings as alleged in the supplemental answer, could so summarily disturb or modify the judgment of the state court. 2 Remington, Bankruptcy, § 1652; *Galbraith* v. *Vallely, Trustee*, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823; *Louisville Trust Co.* v. *Comingor*, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413; 1 Remington, Bankruptcy, § 545; *Bardes* v. *Hawarden Bank*, 178 U. S. 524, 20 S. Ct. 1000, 44 L. Ed. 1175. These authorities teach that third parties having, at the time of the bankruptcy, possession of tangible property or funds involved, under claim of a beneficial or adverse interest therein, cannot be obliged to surrender them, nor can third persons owing debts to the bankrupt at the time of the bankruptcy be obliged to pay the debts, nor can such parties be obliged to submit their rights in such property, funds, or debts for determination in the bankruptcy court by summary proceedings, in the bankruptcy

proceedings, even on notice and hearing, and that such property, funds, or debts thus owing or adversely held are to be reached only by instituting plenary suits in which the parties may be brought into court by due service of summons or subpoena, where pleadings may be filed, issues joined, and trial had in accordance with the usual forms of procedure. It is not averred in the so-called supplemental answer that any such proceedings were had in the federal court.

The trustee asserts that he finds himself in a most peculiar situation; "that he is between Scylla and Charybdis." Whether the referee or the federal court, or the state court, was the nymph who drew in the waters of the 7-8 sea and spewed them out again, or the nymph changed into the sea monster dwelling in a rock cave opposite the abode of the other nymph, is not stated. It, however, may occur, even in modern times, where one may find himself in an embarrassing situation between two "nymphs." But it usually is, as it here was, the result of his own choosing. Instead of paying the proceeds of sale of the property into the state court to be applied in payment and satisfaction of the judgment as rendered and directed, the trustee chose not to do so and deposited the proceeds of sale in a bank in his own name as trustee, and thus disobeyed the mandate of the court in such particular. It is a general principle that disobedience of a valid order of a court constitutes contempt unless he was unable to comply with it. Here the trustee in the first instance had the undoubted ability to comply with the order. When the proceeds of sale were paid to him he then could have paid them into court as ordered and directed and as he had agreed to do. In disobedience of such order he chose a different course. He may not have done so contumaciously but from ill-advice or misdirection. The court, nevertheless, was authorized and justified in compelling obedience to its mandate. Since no appeal was taken from the judgment of the state court and since it has become final and

is binding on the parties, including the trustee, we see no alternative but to comply with it. The lower court finding him guilty of contempt still gave him opportunity to pay the money into court. If he has deposited it at some place where he no longer can command control of it, that is his own fault. The lower court evidently was of the opinion that he still had ability to comply with the order. We think the court was authorized and justified in finding the appellant guilty of contempt and in rendering the judgment which was rendered. Of course the appellant ought not to be imprisoned if he be wholly unable to comply with the order; and if he be imprisoned the court may at any time in its discretion, either on its own motion or on proper application, inquire into the question of the ability of the trustee to obey the order, and if satisfied of his inability to comply, the court may, and no doubt will, discharge him. But the inability to comply must be clearly made to appear. The mere fact that the trustee in violation of his agreement and in disobedience of the court's order and mandate so deposited the funds that he no longer has control of them is not sufficient in and of itself to show inability to comply with the court's order. If because of such disposition and by reason thereof the trustee is unable and otherwise has not the ability to comply with the order, he ought not to be incarcerated unless placing the funds beyond his control was done contumaciously or willfully or intentionally to defeat the court's order.

The judgment of the court below is affirmed.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.