Appellants, as successor administrators with the will annexed, petitioned the district court for an order directing respondent, former executor who had been removed, to show cause why he should not be punished for contempt for failure to pay over specified sums of money which the court had previously ordered him to pay over to his successors. Respondent's demurrer to this petition was sustained and the proceedings in contempt dismissed from which petitioners appeal. The only question raised is whether the petition states a cause for action.
The petition recites that an order was entered directing respondent to pay to his successors the sum of $5,033.02 which he wilfully failed to pay although able to do so. *Page 339 
No composite order appears to have been entered but instead there appear two separate orders on separate accountings. The first was entered after a hearing on the fifteenth account; the court disallowed certain items of disbursement, and ordered respondent to pay over an aggregate sum of $4,826.02 and then declared that judgment was thereby entered against him for said sum. The second was entered after a hearing on the sixteenth and seventeenth accounts; the court again disallowed certain items of disbursement, and ordered respondent to pay over to his successors an aggregate sum of $206, which includes $39 interest, and judgment was declared entered against him for that amount. Apparently these two items make up what petitioners call an order to pay $5,033.02. However, there is a mistake of one dollar in the computation.
Included in these orders are three classes of items: The first class was an item of $203.99 which the court in settling the fifteenth account found to be:
"Balance of cash on hand carried forward from Fourteenth Accounting."
The second class consists of items which, without the court's approval, respondent withdrew from the estate funds for his own use claiming them as salary and executor's fees which the court later refused to allow. The aggregate of these items is $2,350, of which $2,183 was included in the first order and $167 in the second. The $167 item and $39 interest are the only items in the second order. The third class consists in items of money paid to third persons, without the court's approval aggregating $1,165 on claims for services rendered to the estate, which the court later refused to allow. All of these items total only $3,757.99, not $5,033.02 which is the total of the sums in the two orders which he was ordered to pay. The difference occurs in the first order, where the various items are set out and apparently totaled but the result is not a correct addition of the items set out. *Page 340 
Was the respondent, under the facts alleged in the petition, guilty of contempt? Section 104-45-1, U.C.A. 1 1943, provides that:
"(5) Disobedience of any lawful judgment, order or process of the court"
constitutes contempt for its authority. By the decisions a further limitation to this rule not expressly stated in the statute has been added: In Mary Jane Stevens Company v.Foley, 67 Utah 578, 248 P. 815, 819, we said:
"It is a general principle that disobedience of a valid order of a court constitutes contempt unless he was unable to comply with it."
In State v. Bartholomew, 85 Utah 94, 38 P.2d 753, 755, commenting on this statutory provision we said:
"* * * the inability of the defendant, without fault on his part, to render obedience to the judgment would be a complete defense to the charge of contempt for failure to comply with such judgment, inasmuch as the ability to comply with the judgment or order is a prerequisite to the validity of a judgment of contempt."
However, this does not necessarily require ability to comply with the order at the time of commitment for contempt. Conceivably a person might, while he had the ability to comply therewith, deliberately fail to obey the court's order, and then after his contempt was complete lose the 2 ability to perform, but he would still be guilty of a past contempt. Such contempt would be punishable under Section 104-45-10, U.C.A. 1943, which limits the punishment to $200 fine and thirty days imprisonment. If he deliberately rendered himself unable to comply with the court's order, or even if he were deprived of the ability to perform by events which were beyond his control he would still not be thereby purged of his past contempt. On the other hand, under Section 104-45-12, U.C.A. 1943, where it is yet within his power to perform, the court may for the purpose of compelling obedience to its order imprison him until he complies therewith. Openshaw *Page 341 
v. Young, 107 Utah 408, 159 P.2d 123; Mary Jane Stevens v.Foley, supra; Hillyard v. District Court, 68 Utah 220,249 P.2d 806; Ex parte Gerber, 83 Utah 441, 29 P.2d 932; Parish
v. McConkie, 84 Utah 396, 35 P.2d 1001.
Thus under Section 104-45-1, U.C.A. 1943, and the cases above cited modifying the same, it is established that where a person, having the ability to comply therewith, willfully fails to obey a lawful order of a court he is guilty of contempt. The petition alleges the making of the orders, the 3 respondent's ability to comply therewith and his willful and contumacious failure to obey the same. The question of his ability to pay is still to be tried. If the orders that the respondent pay this money over were lawful orders, as to any item therein contained, then respondent was guilty of contempt and the court erred in sustaining the demurrer.
The court found that the first class of moneys, consisting of $203.99, was cash on hand. Respondent appealed on other points from that judgment. In re Clift's Estate, 101 Utah 343,122 P.2d 196. There is, however, nothing in the record here or in our opinion disposing of that appeal which 4 indicates that respondent was dissatisfied with that finding or ever claimed that he did not have that money on hand. The court sitting in probate, having acquired jurisdiction to administer this estate, in accordance with the will appointed respondent executor without bond, and as such he acquired possession and control of the property of the estate. The court found irregularities in his fifteenth account and thereupon ordered him to furnish a bond and upon his failure to comply therewith removed him and appointed his successors. He obtained and held possession of this money only as agent and officer of the court, In re Stevens' Estate, 102 Utah 255, 130 P.2d 85. He could legally dispose of the property of the estate only under the court's directions, and the court retained jurisdiction over him after his removal until he had disposed of the property of the estate in accordance with its orders. In re Barker'sGuardianship, 103 Utah 109, *Page 342 133 P.2d 784; People v. Cartwright, 99 Colo. 437, 63 P.2d 454; Inre Wax's Estate, 149 Misc. 851, 268 N.Y.S. 355; First NationalBank of Cape Girardeau v. Lufcy, 8 Cir., 34 F.2d 417. Clearly, as to this money, the order that he turn it over to his successors was lawful, and to that extent the petition stated a cause of action. Apparently neither party noticed that this money was found to be cash on hand and the question on that basis was not argued by either side.
There is no finding that the second and third classes of items were cash on hand. The court, apparently with some hesitation, found that the third class of items had been paid to third persons and that the second class were "reported as" paid to respondent. Thus under these findings 5 respondent had completely disposed of the funds in the third class of items, and did not have as separate funds of the estate the moneys in the second class. It is possible to distinguish between these two classes of items; there is a stronger duty to repay to the estate moneys which he has appropriated to his own use than funds paid to third persons where he received no benefit therefrom. But the cases have not made any such distinction and we will therefore consider them together. On the questions of whether these funds were paid out in good or bad faith and whether he had the ability to pay such sums over to his successors the court made no findings, those questions were not necessary issues in an accounting. However, where an executor pays funds of an estate either to himself or to third persons without first obtaining the approval of the court, and later the court refuses to allow him credit therefor against the estate, while it does not necessarily show that he acted in bad faith, it does show a misapplication of the funds of the estate. In all doubtful cases an executor should first obtain the approval of the court before disposing of the property of the estate, and where he fails to do so he acts at his peril. In reHansen's Estate, 55 Utah 23, 184 P. 197; Wise v. Cutchall,171 Okla. 60, 41 P.2d 864.
Could the court lawfully order respondent to pay over the *Page 343 
items in classes two and three? In the case of In re Raleigh'sEstate, 48 Utah 128, 158 P. 705, 709, on this question we said:
"It is next contended that the court erred in entering a personal judgment against the executors. We think this contention is well taken. As we view it, no court is authorized in any proceedings to enter a judgment against a deceased person. [One of the executors was deceased.] In any event, however, the court, in the first instance, should only find what amount, if any, the executors are to be charged with in addition to the amount disclosed by their final accounting, and if the court finds that they are to be charged with an additional sum or amount, then the court should order them to pay it into court * * *."
That case did not involve cash on hand but mismanagement and wasteful handling of the property and interest for long delay in bringing the administration to a close. Thus the holding that the executor should pay over the additional sums with which they were chargeable is direct authority that such an 6 order would be lawful. An executor is not only a fiduciary but obtains control of the property of the estate as an officer of the court and simply acts under its orders. In reStevens' Estate, supra. It is a universal practice, in this and other jurisdictions for the court to order such funds to be paid over to the persons entitled thereto, and hold in contempt the executor who fails to comply with such orders. In re Boyer,74 Misc. 329, 134 N.Y.S. 231, 8 Mills 473; People v. LaMothe,331 Ill. 351, 163 N.E. 6, 60 A.L.R. 316; Jastram v. McAuslin,29 R.I. 390, 71 A. 454, 17 Ann. Cas. 320; Wise v. Chaney,67 Iowa 73, 24 N.W. 599; Taylor v. Taylor, 79 Colo. 487,247 P. 174; Allen v. Sarshik, 299 Pa. 257, 148 A. 25; Allen v.Pennypacker, 302 Pa. 495, 153 A. 734; Meinhard v. Salmon,249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1; see annotation on this question in 60 A.L.R. 322. Some of these cases involve a trustee acting under the order of the court where the principle would be the same. An executor, administrator or such trustee, has a much higher duty to account for the property placed under his control than an ordinary debtor *Page 344 
does to pay his obligation, and under such circumstances the court may order him to pay and enforce such order by a contempt proceedings. Otherwise, such officer of the court might wrongfully dispose of the property entrusted to him as such, and then dispose of, conceal, or place beyond the reach of the court by execution, all of this property, and thus use his office to perpetrate a fraud, and with impunity enjoy the proceeds thereof.
We are not here called upon to decide whether the court can lawfully enter a personal judgment against an executor in addition to ordering him to pay over to his successors the sums which the court finds the estate is entitled to from him. Nothwithstanding the decision to the contrary in 7, 8 the Raleigh case, supra, it would appear from Section 102-14-17, U.C.A. 1943, which provides expressly for the entering of such judgment, that a judgment so entered would be lawful. That Section was in force at the time of the Raleigh decision but was not referred to therein, and apparently the court was not aware of its existence. In any event the fact that there is a personal judgment upon which execution may issue, in the absence of an express statutory provision to the contrary, does not prevent the court from enforcing its orders by contempt proceedings. Gildersleeve v. Lester, 68 Hun 535, 22 N.Y.S. 1028; Ex parte Carboni, 46 Cal.2d 605, 116 P.2d 453.
Nor does imprisonment for contempt by failure to comply with an order which the court could lawfully make violate Section 16, Article I of the Constitution, which prohibits imprisonment for debt. Even where the violation of the order is the failure to pay over money for the recovery of which a 9 judgment has been entered on which an execution may issue, if the order is one which the court could lawfully make the imprisonment is not for the failure to pay the debt, but because of the failure to obey a lawful order of the court which constitutes contempt of court. The court under such circumstances has the power to coerce obedience to its orders. State v.Reese, 43 Utah 447, *Page 345 135 P. 270; Rudd v. Rudd, 184 Ky. 400, 214 S.W. 791;Jastram v. McAuslan, supra.
This cause is remanded with directions to overrule the demurrer to the petition and proceed in accordance with the views herein expressed. Appellants may recover their costs of appeal.
McDONOUGH, TURNER, and WOLFE, JJ., concur.